LOUISE D. STAPLETON, executrix,[1] & another[2] *vs.* A. PHILIP MACCHI & others.[3]

Norfolk. December 10, 1987. — February 18, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Practice, Civil,* Judgment notwithstanding verdict. *Contract,* Option, Performance and breach. *Trust,* Resulting trust. *Limitations, Statute of.*

On a tenant's claim against the owners of a building for breach of contract arising from a lease agreement containing an option to purchase, which could have been exercised by the tenant upon written notice to the owners, the judge correctly allowed the defendants' motion for judgment notwithstanding the verdict, where the tenant's self-contradictory oral statements concerning the existence of a written notice to the owners of his intent to exercise the option to purchase did not prove the existence of the written document by more than a mere scintilla of evidence. [728-729]

A claim by a tenant based upon a resulting trust arising from an agreement among parties to a building lease was barred by G. L. c. 260, § 2, the applicable six-year statute of limitations, where the tenant became aware that the resulting trust had been repudiated more than six years prior to instituting his suit. [729-730]

CIVIL ACTION commenced in the Superior Court Department on August 25, 1982.

The case was tried before *Guy Volterra,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

---

[1] Of the estate of John M. Macchi.

After the return of the jury verdict but before the entry of judgment notwithstanding the verdict, John Macchi died. This appeal is prosecuted by his daughter, Louise D. Stapleton, in her capacity as executrix of his estate. Both plaintiffs will be referred to as "the plaintiff" or simply as "John" where the context so permits.

[2] Macchi Bros., Inc.

[3] Mona Macchi and Philip H. Macchi.

*Michael K. Mattchen* (*Thomas F. Sullivan* with him) for the plaintiffs.

*George A. Berman* for the defendants.

LYNCH, J. In this action, the plaintiff, John M. Macchi, asserted various claims of ownership to property at 1250 Washington Street, Norwood. After allowance of certain of the defendants' motions for directed verdict, there remained a claim for breach of contract and a claim based upon a resulting trust. The contract claim was tried to a jury; the judge reserved to himself the resulting trust claim, and ruled thereon for the defendant. The jury returned a verdict for the plaintiff on the contract claim, but judgment notwithstanding the verdict was entered upon the defendants' motion. The plaintiff appeals from the grant of the defendants' motion for judgment notwithstanding the verdict and from the judge's ruling that the resulting trust claim was barred by the statute of limitations.

We summarize the facts.[4] Louis Macchi, A. Philip (Angelo) Macchi, and the plaintiff, John Macchi, are brothers. In 1950, Angelo purchased three lots at 1250 Washington Street, Norwood, which comprise the property at issue here. Angelo agreed to purchase the property from the previous owners for $3,750 and on May 16, 1950, paid a $300 binder to secure the purchase. Angelo acquired title on May 22, 1950, with the balance of the purchase price, $3,429.86, being provided by John and Louis. Thereafter, Angelo obtained a construction loan of $15,000, and construction commenced on a building to be occupied by an appliance store operated by John and Louis. Construction was completed on October 17, 1950, at a total cost of $25,898.41. Of this sum, John and Louis provided $8,000 for interior construction.

---

[4] As this case is an appeal both from a judgment notwithstanding the verdict and from the judge's ruling on the resulting trust claim, it presents two factual postures. The facts relating to the judgment notwithstanding the verdict claim must be construed entirely in favor of the plaintiff. *D'Annolfo v. Stoneham Hous. Auth.*, 375 Mass. 650, 657 (1978). The facts underlying the resulting trust claim may be taken directly from the trial judge's findings of fact. Where material, we shall indicate where these factual postures vary.

On December 2, 1950, Angelo, his wife Mona, John, his wife, Josephine, and Louis executed an agreement in which Angelo and Mona are identified as owners of the building at 1250 Washington Street and John, Josephine, and Louis are identified as tenants. The agreement provides for annual rent of $3,000 for a term of five years. At the termination of the lease, the tenancy was to continue perpetually from year to year, commencing as of January 1 of each year, unless the rent for the months of January and February had not been tendered on or before March 1 of that year.

The agreement also contained an option to purchase. The purchase price was to be determined by computing the actual cost of the building and land to Angelo and Mona, less the rental payments made by John and Louis. The option could be exercised at anytime by John and Louis giving written notice to Angelo and Mona. The agreement was made binding upon and inured to the benefit of all of the parties executing the lease agreement and their executors, administrators and assigns.

Sometime between August and October of 1973, Macchi Bros. discontinued its appliance business at 1250 Washington Street and John began to move his personal property out of the building. John stated on direct examination that before he vacated the premises he had given Angelo written notice of his exercise of the option to purchase the building under the 1950 agreement. No documentary evidence of written notice was produced at trial. John later testified that he had not given Angelo written notice of his exercise of the option.

After John vacated the building, Angelo leased it to one Richard Shires who intended to operate a curtain and drapery business. On February 25, 1974, John wrote to Angelo making inquiry as to when he was going to receive money from the rental of the property to Shires. John received no response to this letter..

Shortly after writing the letter, John retained the services of an attorney with respect to his claim for the building. The attorney called Angelo's son Philip, also an attorney, to inform Philip that John had showed him a 1950 lease agreement and

that John was claiming ownership of the building. Several days later, Philip received a telephone call from a law firm informing him that it was representing John Macchi with respect to his claim for the building and made various inquiries of Philip with respect to the 1950 agreement. After this initial telephone call, Philip did not hear further from the law firm.

In April, 1976, John encountered Philip Macchi at the Dedham District Court, and reminded his nephew that he still claimed ownership of the building. Philip indicated that his father disputed this claim and left. John instituted this suit on August 25, 1982.

1. *The contract claim.* The plaintiff asserts that the trial judge erred in granting the defendants' motion for judgment notwithstanding the verdict on the breach of contract claim. In reviewing an appeal from a judgment notwithstanding the verdict, we construe the evidence against the moving party and ask whether the evidence nonetheless justifies a verdict against him. *D'Annolfo* v. *Stoneham Hous. Auth.,* 375 Mass. 650, 657 (1978). We focus on the question whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff. *Miles* v. *Edward O. Tabor, M.D., Inc.,* 387 Mass. 783, 785-786 (1982). *Raunela* v. *Hertz Corp.,* 361 Mass. 341, 343 (1972). *Brown* v. *Gerstein,* 17 Mass. App. Ct. 558, 560 (1984). *Glicklich* v. *Spievack,* 16 Mass. App. Ct. 488, 489-490 (1983). However, a party may not avoid a directed verdict or entry of judgment notwithstanding the verdict against him[5] if any essential element of his case rests upon a "mere scintilla" of evidence. *Hartmann* v. *Boston Herald-Traveler Corp.,* 323 Mass. 56, 59 (1948). See *Farnham* v. *Lenox Motor Car Co.,* 229 Mass. 478, 484 (1918); J.W. Smith & H.B. Zobel, Rules Practice § 50.6 (1977). In this instance there is no more than a scintilla of evidence that John ever exercised the option to purchase.

---

[5] The standards for deciding motions for directed verdict and judgment notwithstanding the verdict are the same. *D'Annolfo* v. *Stoneham Hous. Auth., supra* at 657. J.W. Smith & H.B. Zobel, Rules Practice § 50.13 (1977).

In order effectively to exercise the option John was required to comply strictly with its terms.[6] *Westinghouse Broadcasting Co.* v. *New England Patriots Football Club, Inc.,* 10 Mass. App. Ct. 70, 73 (1980). The terms of the option provide that the option may be exercised upon "written notice" to the owners. The testimony as to written notice consisted of John Macchi's statement on direct examination that "I also gave him [Angelo] a note on the paper to that effect." The "note on the paper" was not produced at trial and John later testified that he had not in fact given Angelo written notice. The plaintiff points to no other evidence that the option was properly exercised. Self-contradictory oral statements of a party-witness concerning the existence of a written document (apparently not objected to under the best evidence rule) do not prove the existence of the written document by more than a mere scintilla of evidence and, therefore, the motion for judgment notwithstanding the verdict was properly allowed.

2. *The resulting trust claim.* The judge found that the plaintiff's resulting trust claim was barred by the statute of limitations. The applicable statute of limitations for purposes of enforcing a resulting trust is six years. G. L. c. 260, § 2 (1986 ed.). *Hanrihan* v. *Hanrihan,* 342 Mass. 559, 565-567 (1961). The cause of action accrues when the plaintiff becomes aware that the trust has been repudiated. *Hanrihan* v. *Hanrihan, supra* at 567. *Cosentino* v. *Cosentino,* 10 Mass. App. Ct. 892 (1980).

The judge found that John Macchi was aware that Angelo had "double-crossed" him more than six years prior to instituting this suit, when John vacated the building and received no rents from Angelo.[7] This factual finding is supported by the evidence. In fact, John Macchi himself testified that he believed

---

[6] An option is simply an irrevocable offer creating a power of acceptance in the optionee. 1A A. Corbin, Contracts § 259 (1963). Therefore, no duty to perform arises in the optionor until the optionee accepts the irrevocable offer embodied in the option. See *id.*

[7] John testified that he felt he had been "double-crossed" in 1974 and that he vacated the premises in 1973. Whether this indicates that John was aware of a repudiation in 1974, as opposed to 1973, is immaterial.

he had been "double-crossed" in 1974.[8] In 1974, he retained an attorney to represent him with respect to his claim for the building.[9] Translated into legal terms, this testimony indicates that John Macchi was aware that his brother had repudiated the resulting trust. Therefore, the judge's factual finding was not "clearly erroneous." Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). Clearly, if the plaintiff had knowledge of a repudiation in 1974 and did not bring suit until 1982, the applicable six-year statute of limitations ran its course before suit was brought, and the plaintiff's claim is time-barred.

*Judgment affirmed.*

---

[8] The plaintiff argues that his testimony that he was "double-crossed" cannot serve as evidence that he knew the trust had been repudiated because he was referring in that testimony to Philip Macchi's alleged failure to collect rents from the new tenant on behalf of the plaintiff. As trier of fact, it was reasonable for the judge to infer from this testimony both that the resulting trust had been repudiated and that the plaintiff was aware of that repudiation.

[9] There was also testimony of a conversation occurring in April, 1976, between the plaintiff and Philip Macchi in which the plaintiff stated that he claimed ownership of the building and Philip Macchi purportedly stated that his father disputed that claim. However, the testimony as to Philip Macchi's statements was excluded as inadmissible hearsay.